# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **STONEBRIDGE LIFE INSURANCE COMPANY,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | **CIVIL ACTION 06-0655-WS-M** |
| **JOE VERNEUILLE,** *et al.*, ) ) | |
| **Defendants.** ) | |

## ORDER

This action is before the Court on defendant Joe Verneuille's Motion to Dismiss for Lack of Jurisdiction (doc. 4).  The Motion has been briefed and is ripe for disposition.[1]

**I.     Background.**

On October 11, 2006, plaintiff Stonebridge Life Insurance Company ("Stonebridge") filed the instant Complaint for Declaratory Judgment (doc. 1) in this District Court, naming Joe Verneuille (as Trustee of the Bankruptcy Estate of Theresa Bostwick) and Bill Aultman as defendants.  In the two-count Complaint, Stonebridge maintains that a bona fide case or controversy exists as to whether Stonebridge has any present duty to make payments to the Bostwick estate on a certain life insurance policy (the "Policy") that Stonebridge had issued to non-party Rene Stricklin.  An exhibit appended to the Complaint reflects that Stonebridge had issued a policy providing $75,000 of life insurance coverage to Stricklin in or around 1992.  The Complaint alleges that Stricklin died in 2002, and that the Policy's named beneficiary was Theresa Bostwick.  (Complaint, ¶ 5.)  Upon receipt of appropriate claim documentation, Stonebridge paid the full $75,000 death benefit to Bostwick on June 9, 2003.  (*Id.*, ¶ 8.)  According to the Complaint, Bostwick, in turn, disbursed the proceeds by writing a check to

---

[1]     Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

herself in the amount of $500 and a check to the Estate of Rene J. Stricklin in the amount of $74,500. (*Id.*)[2]

Unfortunately, Stonebridge's payment of insurance proceeds in this manner did not resolve the matter. Bostwick died sometime later, after which her estate fell into bankruptcy. (Complaint, ¶ 9.) Verneuille, as trustee of that bankrupt estate, "made a claim against Stonebridge to reissue the proceeds of the Stricklin coverage to him as Trustee in the amount of $74,500" on the ground that the claim had been paid out negligently. (*Id.*) Verneuille's demand letter precipitated Stonebridge's filing of this lawsuit, seeking a declaration that it has no further liability under the Policy and alternatively claiming that defendant Aultman, trustee of Stricklin's estate, procured the $74,500 payment from Bostwick through fraud or misrepresentation.

No federal questions are presented on the face of the Complaint. Rather, Stonebridge predicates subject matter jurisdiction on diversity of citizenship, pursuant to 28 U.S.C. § 1332. According to the Complaint, plaintiff is a citizen of Vermont and Maryland for diversity purposes, while both defendants are Alabama citizens. With respect to the amount in controversy, the Complaint alleges that it "exceeds the sum of $75,000." (Complaint, ¶ 3.) To support this proposition, the Complaint alleges that (a) Verneuille has claimed $74,500 of the Policy proceeds (the other $500 having been disbursed to and received by Bostwick); and (b) Verneuille's counsel has threatened to sue Stonebridge for the Policy amount, plus "such other damages as we may recover from a jury." (*Id.*, ¶ 9.) Defendant Verneuille now moves to dismiss the Complaint for want of subject matter jurisdiction.

## II.     Analysis.

Federal courts have limited jurisdiction. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in

---

[2]     Although not pleaded in the Complaint, it is apparently Verneuille's position that Bostwick was deceived or coerced into making the $74,500 payment to the Stricklin estate. Verneuille contends that Stonebridge's errors in disclosing Policy beneficiary information to Aultman (on behalf of the Stricklin estate) and failing to notify Bostwick that she was the Policy's sole beneficiary rendered Bostwick vulnerable to Aultman's alleged deceptions, causing her loss of $74,500 in Policy proceeds.

controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.*; *see Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000"); *State Farm Mut. Auto. Ins. Co. v. Greater Chiropractic Center Corp.*, 393 F. Supp.2d 1317, 1323 (M.D. Fla. 2005) (diversity jurisdiction requires plaintiff to establish that good-faith estimated value of claims exceeds statutorily required amount). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

To satisfy § 1332, mere diversity of the parties is not sufficient; rather, "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison*, 228 F.3d at 1261. Where, as here, the plaintiff seeks declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)); *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp.2d 1205, 1207-08 (S.D. Ala. 2005) (same). The law is clear that "the value of the requested [declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the [declaration] were granted." *Morrison*, 228 F.3d at 1268 (citation omitted).

There are two possible legal standards for assessing whether the amount in controversy is satisfied. The first, the so-called "legal certainty" test, applies when the complaint has pleaded the jurisdictional amount, and provides that the amount-in-controversy threshold is satisfied for Rule 12(b) purposes unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Federated Mut.*, 329 F.3d at 807 (citation omitted). The second test applies when a complaint claims indeterminate damages. In that event, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Id.* Verneuille invokes the preponderance test; however,

the Complaint specifically alleges that the amount in controversy "equals more than $75,000," and recites specific facts (Verneuille's demand for $74,500, Verneuille's threat to seek "such other damages as we may recover from a jury") to support that jurisdictional allegation.  (Complaint, ¶ 9.) The Eleventh Circuit has found such an allegation sufficient to trigger the legal certainty test.  *See Morrison*, 228 F.3d at 1261 & 1272 (applying legal certainty test where complaint simply alleged that matter in controversy exceeded $75,000, without requesting specific dollar amount or otherwise explaining basis for jurisdictional allegation); *Lister v. Commissioners Court, Navarro County*, 566 F.2d 490, 492 (5th Cir. 1978) ("An allegation in the complaint of the requisite amount will normally suffice to confer jurisdiction ... if the claim is made in good faith and unless it appears to a legal certainty that the claim cannot be satisfied."); *Raye v. Employer's Ins. of Wausau*, 345 F. Supp.2d 1313, 1317 (S.D. Ala. 2004) (applying "legal certainty" test where complaint expressly demanded recovery in excess of $75,000).  The Court will therefore apply the legal certainty test.

The Policy at the core of this dispute had a death benefit of $75,000.  It is universally agreed that Bostwick received $500 of those proceeds, leaving only the remaining $74,500 in play.  It is likewise unchallenged that, shortly before the filing of this declaratory judgment action, Verneuille (on behalf of Bostwick's bankruptcy estate) transmitted a demand letter and proposed state-court complaint to Stonebridge reciting claims for breach of contract and negligence, both in the amount of $74,500, plus interest and costs.  Thus, there is no disagreement that only $74,500 in Policy benefits are at issue in the underlying proposed litigation.  Given that the total death benefit was exactly $75,000, and that Bostwick already received $500 of that benefit, it is a factual and logical impossibility that Verneuille could recover more than $74,500 in life insurance proceeds in the underlying proposed lawsuit.

Nonetheless, Stonebridge seizes on a stray phrase in Verneuille's counsel's demand letter, wherein he threatened to "seek the full amount of the policy, plus interest and ***such other damages as we may recover from a jury.***"  (Motion to Dismiss, Exh. A (emphasis added).)   Stonebridge argues that this statement, by itself, establishes that the amount in controversy eclipses the $75,000 jurisdictional benchmark, and that Verneuille should be judicially estopped from disputing the point.

This argument fails. The proposed complaint appended to the demand letter is expressly limited to seeking a judgment of $74,500, plus interest and costs. To be sure, Stonebridge correctly notes that Alabama juries are not constrained by the amount of any demand in a complaint.[3] But the record makes clear that the maximum value (exclusive of interest, fees and costs) of any underlying claims brought by Verneuille against Stonebridge would be $74,500, such that any jury verdict in excess of that amount would be subject to remittitur or vacatur. Verneuille's potential claims against Stonebridge seek exclusively the payment of insurance proceeds to Bostwick's bankruptcy estate. As explained *supra*, the sum total of the insurance proceeds in dispute is $74,500. There is no indication in the record of any conceivable possibility that the disputed proceeds could ever exceed $74,500. Nor is there any plausible basis for any kind of "add-on" claim by Verneuille to pursue additional types of damages against Stonebridge. Nothing and no one suggests that Verneuille has or might have a viable claim against Stonebridge for bad faith, emotional distress, fraud, punitive damages, consequential damages, or some other kind of claim that might expand the pallette of available monetary relief beyond the $74,500 in insurance proceeds.

      The fundamental problem with Stonebridge's reliance on the isolated comment in Verneuille's demand letter is that there are no facts or legal theories to support that statement. To assert, as Verneuille's counsel did, that his client will sue for the contested proceeds plus "such other damages as we may recover from a jury" is a hollow threat in the absence of any legal theory or claim that might support damages in excess of those Policy proceeds.[4] The proposed complaint that accompanied the

---

[3]    *See, e.g., General Motors Acceptance Corp. v. Covington*, 586 So.2d 178, 183 (Ala. 1991) ("an amount of recovery requested in the pleadings does not prohibit the jury from awarding the plaintiff what it views as an appropriate award based on the facts and evidence presented"); Rule 54(c), Ala.R.Civ.P. (providing that judgment shall grant relief to which party is entitled, "even if the party had not demanded such relief in the party's pleadings").

[4]    In briefing the Motion, Stonebridge's counsel would impute malfeasance to Verneuille's counsel in sending a "false" demand letter, "intentionally engag[ing] in puffery for coercive purposes," and making "coercive dollar demands." (Plaintiff's Response (doc. 9), at 5-7.) Such thinly-veiled accusations are quite serious, and should not be made lightly. More to the point, they vastly overstate Verneuille's counsel's transgression (if, indeed, there was any transgression at all). The offending language in the demand letter mimics that used in innumerable complaints and motions filed in this

demand letter offered no hint that there were any categories of damages sought other than insurance proceeds, or that the amount of those insurance proceeds could ever exceed $74,500. Stonebridge has never argued - and close inspection of the record has not revealed - the potentiality of any other theories of relief that might vault Verneuille's total recovery (exclusive of interest, fees and costs) over the $75,000 jurisdictional threshold. By all appearances, then, Stonebridge would predicate federal subject matter jurisdiction exclusively on innocuous generalities in a demand letter. That is far too slender a reed to support the exercise of § 1332 jurisdiction here.

Simply put, then, from Stonebridge's perspective, the total value of any declaratory relief it might receive in this action cannot possibly be greater than the $74,500 in insurance proceeds at issue. Even if granted all of the relief it seeks, Stonebridge will receive nothing more than a declaration that it harbors no "further duty in regard to this life insurance claim." (Complaint, at 3.) The value of that declaration, from Stonebridge's point of view, can never exceed the $74,500 in disputed insurance benefits. Accordingly, the Court concludes to a legal certainty that the value of the declaratory relief sought by Stonebridge against Verneuille is really less than the jurisdictional amount, and that diversity jurisdiction therefore cannot be supported. Dismissal on that basis is appropriate. *See Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1274 n.6 (11th Cir. 2001) ("[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that

---

District Court. Litigants routinely tack on catch-all, boilerplate phrases requesting or demanding "such other and further relief as the Court deems appropriate" or the like. Can these ethereal and unsubstantial expressions reasonably be read as a demand by the plaintiff/movant for more relief than his complaint or motion expressly requests? Or are they simply a nod to convention, a mass of empty words added to the document because that's what cautious trial lawyers do to cover themselves in case they left out anything important? In the undersigned's experience, they are almost always the latter. This is particularly true where, as here, the demand letter was accompanied by a draft complaint that was obviously limited in scope to recovery of the contested insurance proceeds, in the amount of $74,500. No reasonable recipient of those materials could have concluded that Verneuille intended to sue for the contested insurance proceeds, plus some other category of monetary damages separate and apart from costs, attorney's fees or interest. As such, Stonebridge's suggestion that the demand letter reflects some kind of deliberate deception perpetuated by opposing counsel to trick Stonebridge into paying out a higher settlement is both unsupportable and unreasonable.

amount, ... the suit will be dismissed.") (citation omitted).[5]

### III. Conclusion.

For all of the foregoing reasons, defendant Joe Verneuille's Motion to Dismiss (doc. 4) is **granted**.  Because subject matter jurisdiction is lacking,[6] this action is **dismissed without prejudice** in its entirety pursuant to Rule 12(b)(1), Fed.R.Civ.P.  A separate judgment will enter.

DONE and ORDERED this 3rd day of January, 2007.

                                s/ WILLIAM H. STEELE
                                UNITED STATES DISTRICT JUDGE

---

[5] Although the analysis herein focuses on the value of Stonebridge's declaratory judgment claim against Verneuille, the same result obtains with respect to Stonebridge's claim against Aultman.  The latter cause of action seeks "indemnification of the full amount of any proceeds which [Aultman] has wrongfully obtained." (Complaint, at 4.)  At most, Aultman received $74,500 in benefits from the Stricklin Policy; therefore, the value of that indemnification claim (exclusive of interest, fees and costs) is necessarily capped below the jurisdictional minimum.

[6] In the absence of federal subject matter jurisdiction, it is unnecessary to reach, and the Court does not reach, Verneuille's alternative argument that dismissal is appropriate because Stonebridge failed to state a cognizable claim under the Declaratory Judgment Act.